Welsh, J.
This is a G.L.c. 93A, §9 action by Gary F. Egan (“Egan”) for reimbursement of the sum he paid to defendant Herb Chambers 1-93, Inc. (“Herb Chambers”) for repairs to his 1987 Mercedes Benz. After a jury-waived trial, judgment was entered for Egan, and Herb Chambers filed this appeal. We reverse, and order the entry of judgment for Herb Chambers.
Egan had initially taken his Mercedes Benz to Just Rite Auto (“Just Rite”), a repair facility owned by named defendant Harry Zea, for a $150.00 repair to the Mercedes’ “headliner.” In the course of that repair, Just Rite significantly damaged the vehicle’s sunroof and its mechanism. When it became apparent that the task of *182 repairing the damage it had caused was beyond the ken of Just Rite, Egan gave it permission to have the vehicle repaired at an authorized Mercedes-Benz dealership or repair shop. Egan did not specifically authorize Just Rite to take the vehicle to Herb Chambers, but instead gave Just Rite the discretion to select the repair facility. Egan did not anticipate paying Herb Chambers or anyone else for the repair of the damage caused by Just Rite.
Just Rite brought Egan’s vehicle to Herb Chambers, which required Just Rite to execute an acknowledgment of lien under G.L.c. 255, §25. Egan later became concerned about the status and location of his vehicle. When his initial inquiries to Just Rite produced vague and unsatisfactory answers, he threatened to call the police and report the vehicle as stolen. This prompted Just Rite to disclose to Egan that the vehicle had been taken to Herb Chambers for repairs. Egan contacted Herb Chambers and was informed that the repairs had been completed, that the vehicle would be made available upon payment of the repair bill, and that failure to collect the vehicle would result in the imposition of daily storage charges. Egan paid Herb Chambers’ repair bill and recovered possession. He thereafter served a G.L.c. 93A demand letter on Herb Chambers seeking a refund of the moneys he paid to recover his car. When the demanded relief was not forthcoming, Egan commenced this action.
1. A review of the record, including the pleadings, discloses that neither of the parties raised or suggested that the Statute of Frauds, G.L.c. 259, §1, was an issue in this case. The trial judge did, however, rely heavily on the Statute in his memorandum of decision, suggesting that the absence of a writing signed by the party to be charged (Egan) rendered unenforceable Herb Chambers’ claim that Egan was obligated to pay for its repair of Egan’s vehicle. This analysis suffers from two infirmities. First, the Statute of Frauds is an affirmative defense. Mass. R. Civ. P., Rule 8(c). Failure to plead the Statute, or to rely upon it at trial, operates as a waiver of the defense. Pieczarka v. Pieczarka, 328 Mass. 51, 5152 (1951); Rozene v. Sverid, 4 Mass. App. Ct. 461, 465 (1976). Second, the “promise” that the judge deemed to be within the Statute was fully executed. Upon Egan’s payment of the charges that Herb Chambers claimed were due, there was no longer an executory oral “promise” to which the Statute of Frauds might have been applicable. The Statute denies a remedy to one seeking enforcement of an oral promise within its purview; it does not mandate rescission of money paid on account of such a promise. See Dangelo v. Farina, 310 Mass. 758, 761 (1942) (although oral agreement to convey was within the Statute of Frauds, execution of the promise by conveyance did not bar action to enforce grantee’s promise to pay purchase price). The rationale for this principle is explicated with clarity in comment a of the RESTATEMENT (SECOND) of Contracts §145, at 366 (1981), which states:
The Statute of Frauds renders certain contracts unenforceable by action or defense; it does not forbid the maldng or performance of such contracts, or authorize their rescission after full performance on both sides. After such full performance, neither party can maintain an action for restitution merely because the contract was unenforceable under the Statute.
As further explained in 4 A. CORBIN, CONTRACTS §12.10, at 53-54 (rev. ed. 1997 & Supp. 2007):
[A]n oral contract within the statute of frauds is not devoid of legal effect. ... No statute or rule of public policy forbids the making of such contracts or forbids the performance of them after they have been made.
... After full performance, neither party can recover back what has been given, or its value in a quasi contract action.
*183 Egan’s remedy, if any, would be against Just Rite for the money he paid to discharge Herb Chambers’ repairman’s lien to obtain possession of his vehicle.
2. Even if we were to assume, arguendo, that the Statute of Frauds issue was properly before the trial court, the undisputed facts clearly bring the case within a well-known exception to the Statute that was recently explained by the Appeals Court in Central Ceilings, Inc. v. National Amusements, Inc., 70 Mass. App. Ct. 172 (2007), as follows:
[A] case is not within the statute, where, upon the whole transaction, the fair inference is that the leading object or purpose and the effect of the transaction was the purchase or acquisition by the promisor from the promisee of some property, lien or benefit which he did not before possess, but which enured to him by reason of his promise, so that the debt for which he is liable may fairly be deemed to be a debt of his own, contracted in such purchase or acquisition.
Id. at 177-178, quoting Ames v. Foster, 106 Mass. 400, 403 (1871). See also Hayes v. Guy, 348 Mass. 754, 756-757 (1965). Since Egan’s “leading object or purpose” was the recovery of his vehicle from one asserting a possessory repairer’s lien, he was serving his own pecuniary or business advantage. The discharge of the obligation Just Rite owed to Herb Chambers was incidental to Egan’s “leading object or purpose.” Clearly, Egan intended no benefit to Just Rite; he merely wanted his car back. Whether he might have sought a remedy in the nature of replevin- or a declaratory action is uncertain, and could have been expensive and time-consuming. Any benefit to Just Rite was incidental to Egan’s main object or purpose. The case of Fears v. Story, 131 Mass. 47, 49 (1881), is illustrative. The plaintiff in that case, in consideration of the relinquishment of a lien on a vessel that the plaintiff acquired subject to the lien, promised to the lienholder a sum to discharge the lien. The Court held that such promise was an original undertaking not within the Statute of Frauds. The fact that it may have benefitted the one who suffered the lien in the first place was deemed incidental. See Curtis v. Brown, 5 Cush. 488, 491-492 (1850).
3. Egan argues, unpersuasively, in his brief that Herb Chambers “had to have authorization from [Egan] to seek payment from him,” and that its demand for payment from Egan as a precondition to the return of the car violated G.L.c. 93A. First, the argument misconstrues the lien statute. Section 25 of G.L.c. 255 states:
Persons maintaining public garages for the storage and care of motor vehicles brought to their premises or placed in their care by or with the consent of the owners thereof and persons engaged in performing work upon or in connection with the inspection, reconditioning and repairing of motor vehicles shall have a lien upon such motor vehicles for proper charges due them for the storage, work and care of the same.
Based on the unambiguous language of the statute, an owner’s consent is required for the placement of a car in storage and, logically, for any lien arising thereafter for storage charges. An owner’s consent is not a prerequisite, however, to the creation of a repairman’s lien. That lien arises for all “proper charges” for completed repair work. Further, pursuant to 940 CMR §5.05, the “customer” must give written assent for the repair work before the work may be commenced and proper charges ultimately imposed. There is no requirement in the statute or in the regulations that the repairman must obtain the owner’s consent to the repairs, much less to the lien.
And there is no question in this case that Just Rite properly assented to the repairs by Herb Chambers. Egan’s contrary argument ignores the uncontroverted *184 evidence that he expressly authorized Just Rite to take his vehicle to a Mercedes dealership or repair facility for the necessary sunroof repairs. The undisputed evidence thus required, as a matter of law, a finding that the vehicle was brought to Herb Chambers by one with at least implied authority to do so. See Hill v. Creditors Nat’l Clearing House, 289 Mass. 437, 441 (1935). No rational inference could be drawn from the evidence that Egan could have reasonably expected that any repair shop or dealership would perform the repairs at no charge, or that it would even undertake the repairs without Just Rite providing the necessary written consent for those repairs that is required by law. See 940 CMR §5.05. While the trial judge found that Egan did not specifically empower Just Rite to execute an acknowledgment of lien form, the finding is not dispositive, or even material. As noted, Herb Chambers’ G.L.c. 255, §25 lien on the vehicle arose by operation of law as soon as Just Rite authorized the repairs, the work was completed, and payment was not made. Although Just Rite, as the customer, was responsible for payment of the repair charges, the statutory lien was on the vehicle. Herb Chambers could have held the vehicle until payment was made by Just Rite. Herb Chambers was not required to relinquish its lien and release the vehicle to Egan at no charge. It is obvious that Egan’s remedy is against Just Rite, not the repairman that restored his vehicle’s sunroof.[3]
Thus, there was no unfair or deceptive act by Herb Chambers in insisting on full payment before surrendering the vehicle to Egan. Generally, the exercise of a legal right or legal remedy does not constitute a violation of G.L.c. 93A. Begelfer v. Najarian, 381 Mass. 177, 191 (1980); F.C. Constr. Corp. v. J.A. Cataldo Corp., 2000 Mass. App. Div. 295, 297. Of course, the pursuit of legal remedies in a context reeking of extortion and overreaching will not escape scrutiny under G.L.c. 93A See Schubach v. Household Fin. Corp., 375 Mass. 133, 137 (1978) (abuse of statutory venue provision for civil actions). But Herb Chambers’ simple yet firm demand for the payment to which it was entitled lacked the extortionate quality inveighed against in other contexts. See Atkinson v. Rosenthal, 33 Mass. App. Ct. 219, 226 (1992). Cf. Hanner v. Classic Auto Body, Inc., 10 Mass. App. Ct. 121, 122-123 (1980) (unlawful seizure of vehicle from street and without resort to legal process held violative of G.L.c. 93A).
Judgment for the plaintiff is vacated, and this case is returned to the trial court for the entry of judgment in favor of the defendant, Herb Chambers 1-93, Inc.
So ordered.

 We note that there was no issue in this case about either the quality of the work done, or the amount charged.